## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

### CASE NO:08-21843-CIV-MORENO/TORRES

VERONICA KELLY, a citizen of Pennsylvania,
individually and on behalf of all others
similarly situated,

|                          |                          |
|--------------------------|--------------------------|
| Plaintiff,               | **CLASS ACTION**         |

vs.

PALMER, REIFLER & ASSOCIATES, P.A.,
a Florida partnership

        Defendant.
_____

### PLAINTIFF'S CIVIL RICO CASE STATEMENT

Plaintiff files this Civil RICO Case Statement pursuant to Local Rule 12.1, of the

local rules for the Southern District of Florida.  Plaintiff files this Case Statement on

behalf of herself and the proposed Class of Plaintiffs set forth in Plaintiff's Class Action

Complaint filed on June 26, 2008.

1.      **STATE WHETHER THE ALLEGED UNLAWFUL CONDUCT IS   IN
        VIOLATION OF 18 U.S.C. §§ 1962(a)(b)(c) AND (d) AND/OR §§
        772.101 (1), (2), (3), AND/OR (4), Fla Stat.   IF YOU ALLEGE
        VIOLATIONS OF MORE THAN ONE SUBSECTION OF § 1962 OR
        772.103, EACH MUST BE TREATED OR SHOULD BE   PLED AS A
        SEPARATE RICO CLAIM.**

Plaintiff asserts violations of 18 U.S.C. § 1962(c) and 18 U.S.C. § 1962(d).

Plaintiff does not allege a violation of 18 U.S.C. § 1962(a) or § 1962(b) and alleges no

violation of Fla. Stat. § 772.101.

Dockets.Justia.com

**2.    LIST EACH DEFENDANT, AND SEPARATELY STATE THE MISCONDUCT AND BASIS OF LIABILITY OF EACH DEFENDANT.**

**Defendant:**

Palmer, Reifler & Associates, P.A.

**Misconduct and Basis of Liability**

Defendant and its co-conspirators, on its own and as part of a common fraudulent scheme and conspiracy, extorted millions of dollars from consumers through demand letters that intimidate consumers by using bold and underlined text that falsely implies a local attorney has conducted a professional evaluation of the claim against them and threatens a civil action under civil recovery statutes if a predetermined fee, set forth in the demand letter, is not paid.  Defendant also falsely claims that a lawsuit would be filed against the consumer without any intention of filing one.  Defendant implemented and executed its scheme through mail and wire fraud.

*PREDICATE ACTS – Mail and Wire Fraud:*

As set forth more fully in Section 5, Defendant and its co-conspirators violated 18 U.S.C. § 1341 and 18 U.S.C. § 1343 by sending materials through the Postal Service, by commercial interstate carrier, by wire or other intestate electronic media for the purpose of executing or attempting to execute a scheme to defraud or obtain money by means of false pretenses, representations or promises.  The Defendant and its co-conspirators devised, implemented and coordinated a fraudulent scheme to extort millions of dollars from consumers through demand letters that falsely threaten a civil action by a local attorney under various civil recovery statutes if payment of an amount set forth in the demand letter is not submitted by the consumer to the Palmer Law Firm.

For example, Defendant on or about March 14, 2008, mailed a demand letter to Plaintiff, Veronica Kelly, that threatened a civil action against Plaintiff if she did not submit payment of $202 to Defendant. The demand letter threatens Ms. Kelly by using bold and underlined text that falsely implies a local attorney conducted a professional evaluation of the claim against her daughter – which was false – and threatened a civil action under civil recovery statutes if the predetermined fee of $202 was not paid, despite the fact that they had no intention of filing suit. On or about April 1, 2008, Defendant sent Ms. Kelly a second letter that demanded $477 to avoid commencement of a civil action and falsely claimed that a sheriff would come to her home if she failed to make payment. On or about April 21, 2008, Defendant sent Ms. Kelly a third letter that demanded payment of the same amount. Defendant sent all three letters to Plaintiff through the United States Postal Service. In addition, Defendant, on average, sends through the United States Postal Service between 80,000 and 120,000 demand letters a month, more than one million demand letters a year, to consumers throughout the United States.

*CONSPIRACY:*

Defendant has not undertaken these practices and activities in isolation, but instead has done so as part of a common scheme and conspiracy. Defendant, as part of a common scheme with its co-conspirators, extorted millions of dollars from consumers through demand letters that intimidate consumers and falsely imply a local attorney has conducted a professional evaluation of the claim against them and threatens a civil action under civil recovery statutes if a predetermined fee set forth in the demand letter is not paid. In direct contradiction to the demand letter, however, a local attorney does not

review the case and the Palmer Law Firm has brought few, if any, civil actions against consumers. Defendant's conduct benefits itself as well as its co-conspirators, because Defendant and its co-conspirators reap millions of dollars from consumers at the expense of Plaintiff and the Class Members.

Specifically, Defendant's agreement to the conspiracy is evidenced by the creation and development of the "Palmer Law Firm Enterprise" ("PLFE"). The PLFE consists of: (1) the Palmer Law Firm; (2) various retailers; (3) local attorneys from around the United States; and (4) APIS Asset Protection Information System, a web based data management tool for loss prevention data produced by the design team at RuMe Interactive Corporation and Learn it Solutions ("RIC"). As evidence of the conspiracy, the Palmer Law Firm developed a system that allows it to manipulate and control civil theft collection threats to customers and conceal the true facts about that collection.

To effectuate the conspiracy, the PLFE developed a scheme whereby the Palmer Law Firm contracts with various retailers to extort money from consumers detained for shoplifting. The Palmer Law Firm agrees to send demand letters on behalf of retailers seeking recovery under civil recovery statutes to those consumers the retailers had detained in return for a percentage (18-30%) of any payment recovered. In furtherance of the conspiracy, the various retailers regularly send the Palmer Law Firm lists of individuals they identify as having been detained in its stores, that includes the customer's name, address, age and the date of detention.

The conspiracy, however, required the PLFE to develop sophisticated computer software to generate millions of form demand letters and process consumer payments.

Accordingly, the Palmer Law Firm contracted with RIC and other third parties to develop software that generates automatic form letters, automatically calculates demand amounts and processes payments from consumers.

In order to successfully extort the money from consumers through the conspiracy, Defendant also required the assistance of local attorneys across the United States authorized to practice law in states where the Palmer Law Firm is not licensed. Accordingly, the Palmer Law Firm contracted with various local attorneys to allow the Palmer Law Firm to electronically affix their signature to demand letters in return for a few hundred dollars a month. Finally the conspiracy required that the Palmer Law Firm intimidate consumers by making various false threats as described herein.

*Enterprise:*

As detailed in Sections 6-13, the following "persons" constitute a union or group of individuals associated in fact and referred to in Plaintiff's Complaint and herein as the PLFE: (1) The Palmer Law Firm; (2) various retailers; (3) local attorneys from around the United States; and (4) RIC.

*RICO LIABILITY:*

The Defendant satisfies the definition of a "person" within the meaning of 18 U.S.C. § 1961(c) and Defendant continues to pose a threat to Plaintiff, the Class Members and others. Defendant has engaged in a pattern of racketeering activity as defined by 18 U.S.C. § 1961(5) by committing, conspiring and aiding and abetting in the commission of at least two acts of racketeering activity – indictable violations of 18 U.S.C. §§ 1341 and 1343.

Defendant participated in or conducted the affairs of the Enterprise through this pattern of racketeering activity in violation of 18 U.S.C. § 1962(c) and conspired to violate 18 U.S.C. § 1962(c) in violation of 18 U.S.C. § 1962(d). Defendant violated 18 U.S.C. § 2 by aiding and abetting each of the other co-conspirators in the commission of the predicate acts and by engaging in a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c). Plaintiff and Class Members have been injured in their business and property by Defendant's RICO violations. Accordingly, Plaintiff and the Class Members are entitled to recover "threefold" the damages they have sustained. Plaintiff and the Class Members are also entitled to declaratory and injunctive relief.

**3.     LIST THE WRONGDOERS, OTHER THAN THE DEFENDANTS LISTED ABOVE, AND SEPARATELY STATE THE MISCONDUCT OF EACH WRONGDOER.**

Additional wrongdoers not named as Defendants include: (1) various retailers; (2) local attorneys from around the United States; and (3) RIC. Other wrongdoers, co-conspirators and aiders and abettors may be identified during the course of discovery. The wrongdoing applicable to each wrongdoer is set forth in Sections 2, 6 and 14 of this Civil RICO Statement.

**4.     LIST THE ALLEGED VICTIMS, AND SEPARATELY STATE WHEN AND HOW EACH VICTIM WAS INJURED.**

Each Plaintiff and Class Member is a victim of Defendant's pattern of racketeering activity, overt acts and fraudulent scheme. As a direct and proximate cause of Defendant's scheme and conspiracy, the Plaintiff and the Class Members have been and continue to be injured in their business and property. Plaintiff and the Class Members are injured each time Defendant sends Plaintiff and the Class Members a demand letter that fraudulently claims a local attorney has reviewed the claim, which one

has not, and threatens a civil action, which the Palmer Law Firm rarely, if ever, files. Moreover, the Class Members are injured each time they submit payment to Defendant and Defendant and its co-conspirators fraudulently retain the Class Members' monies. Defendant's conduct has directly and proximately caused a loss of business and property resulting in a legally cognizable injury to the Plaintiff and the Class Members for which relief is appropriate.

5. **DESCRIBE IN DETAIL THE PATTERN OF RACKETEERING, CRIMINAL ACTIVITY OR COLLECTION OF AN UNLAWFUL DEBT FOR EACH RICO CLAIM. A DESCRIPTION OF THE PATTERN OF RACKETEERING CRIMINAL ACTIVITY SHALL:**

  a. **Separately list the predicate acts/incidents of criminal activity and specific statutes.**

There exist numerous predicate acts of mail and wire fraud. In carrying out these overt acts and the fraudulent scheme described throughout this Civil RICO Statement, Defendant has violated federal laws including mail and wire fraud, respectively 18 U.S.C. §§ 1341 and 1343. These predicate acts constitute a pattern of racketeering through which Defendant violated 18 U.S.C. §§ 1962(c) and (d). Defendant has likewise violated 18 U.S.C. § 2 by seeking to, and aiding and abetting, a scheme to violate 18 U.S.C. § 1962(c).

Specifically, Defendant on or about March 14, April 1, and April 28, 2008 mailed through the United States Postal Service demand letters to Plaintiff that threatened a civil action against Plaintiff if she did not submit payment of the amount stated in the demand letter. In addition, Defendant, on average, mails through the United States Postal Service between 80,000 and 120,000 demand letters a month, more than one million demand letters a year, to consumers throughout the United States.

    **b. Separately state the dates of the predicate acts/incidents of criminal activity, the participants and a description of the facts surrounding each predicate act/incident or criminal activity.**

*See* Plaintiff's response to Section 5.A and 5.C.

    **c. If the RICO claim is based on the predicate offenses of mail fraud, wire fraud, fraud in the sale of securities, fraud in connection with a case under U.S.C. Title 11, or fraud as defined under Chapter 817, Fla. Stat., the "circumstances constituting fraud or mistake shall be stated with particularity," Fed. R. Civ. P. 9(b)(identifying the time, place and contents of the misrepresentations or omissions, and the identity of the persons to whom and by whom the misrepresentations were made);**

**Violations of 18 U.S.C. § 1341 and 1343**

For the purpose of executing and/or attempting to execute a scheme to defraud or obtain money by means of false pretenses, representations or promises, the Defendant, in violation of 18 U.S.C. § 1341, beginning at least as early as 1992, placed in post offices and/or in authorized repositories matter and things to be sent or delivered by the Postal Service, caused matter and things to be delivered by commercial interstate carrier, and received matter and things from the Postal Service or commercial interstate carriers, including, but not limited to, demand letters for payment under civil recovery statutes.

For the purposes of executing and/or attempting to execute a scheme to defraud or obtain money by means of false pretenses, representations or promises, the Defendant, also in violation of 18 U.S.C. § 1343, beginning at least as early as 1992, transmitted and received by wire, matter and things which include, but are not limited to, demand letters for payment under civil recovery statutes.

The matter and things sent by the Defendant through the U.S. Postal Service, commercial carrier, wire or other interstate electronic media include, *inter alia*:

    a) material concerning false and fraudulent misrepresentations to consumers that purport to be a claim from a local attorney that has reviewed it, when the

attorney has not, and threatens the filing of a civil lawsuit and a visit from the sheriff, with no actual intent to file such a lawsuit; and

b) information or communication in furtherance of or necessary to effectuate the scheme.

The Palmer Law Firm used the mail and/or wires to contract with various retailers to extort money from consumers detained in those retailers' stores for alleged incidents of shoplifting.

The Palmer Law Firm used the mail and/or wires to receive the names, addresses, ages and other related information from retailers regarding consumers detained for allegedly shoplifting.

The Palmer Law Firm used the mail and/or wires to contract with RIC and other third party entities to develop the computer software that allowed the Palmer Law Firm to automatically generate form demand letters based on the information supplied by the retailers.

The Palmer Law Firm used the mail and/or wires to contract with local attorneys to allow the Palmer Law Firm to electronically affix a local attorney's signature to the form demand letters.

The Palmer Law Firm used the mail and/or wires to mail between 80,000 to 120,000 demand letters a month, more than one million demand letters a year, to various consumers throughout the United States.

The Palmer Law Firm used the mail and/or wires to collect millions of dollars from consumers that proffered payment in response to the demand letters.

The use of mail and wire communications is integral to the success of Defendant's scheme to extort money from consumers. Other matter and things sent

through or received from the Postal Service, commercial carrier or interstate wire transmission by the Defendant include information or communications in furtherance of or necessary to effectuate the scheme.

Plaintiff and the Class Members have been injured in their money and property by Defendant's scheme to defraud them and use of the mail or wire is an essential part of Defendant's scheme. As a result, Defendant has obtained money and property belonging to the Plaintiff and Class Members, and Plaintiff and the Class Members have been injured in their business or property by the Defendant's overt acts of mail and wire fraud, by their conspiracy and by their aiding and abetting each other's acts of mail and wire fraud.

Veronica Kelly

On or about March 14, 2008, Plaintiff, Veronica Kelly, received a demand letter from the Palmer Law Firm demanding payment of $202 over an alleged incident involving Ms. Kelly's daughter at a J.C. Penny's store. The demand letter threatened Ms. Kelly by using bold and underlined text that falsely implied a local attorney had conducted a professional evaluation of the claim against her daughter and threatened a civil action under civil recovery statutes if the predetermined fee of $202 was not paid. On or about April 1, 2008, Ms. Kelly received a second demand letter from the Palmer Law Firm that demanded payment of $477 to settle the claim. On or about April 21, 2008, Ms. Kelly received a third demand letter from the Palmer Law Firm that demanded payment of $477 to settle the claim. All three letters were sent by Defendant through the United States Postal Service.

Moreover, Ms. Kelly received numerous telephone calls from the Palmer Law Firm's Orlando office on behalf of J.C. Penny's demanding payment under the civil recovery statutes. Ms. Kelly, through counsel, informed the Palmer Law Firm that there was no basis for their claim, but they continue to send letters through the United States Postal Service and to contact her via telephone.

**d. State whether there has been a criminal conviction for any of the predicate acts/incidents of criminal activity;**

Plaintiff is not aware of any criminal convictions related to Defendant's commission of the predicate acts.

**e. Describe in detail the perceived relationship that the predicate acts/incidents of criminal activity bear to each other or to some external organizing principle that renders them "ordered" or "arranged" or part of a common plan"; and**

As set forth throughout the Complaint and this Statement, the predicate acts evidence a recurring, systematic means by which Defendant extorted millions of dollars from consumers through demand letters that falsely imply a local attorney has conducted a professional evaluation of the claim against them, which pertains to an alleged incident of shoplifting at a retail store, and threatens a civil action under civil recovery statutes if a predetermined fee, set forth in the demand letter, is not paid.

**f. Explain how the predicate acts/incidents of criminal activity amount to or pose a threat of continued criminal activity.**

Defendant's commission of the predicate acts of mail and wire fraud started as early as 1992 and remains ongoing. Moreover, Defendant currently continues to send through the United States Postal Service anywhere between 80,000 and 120,000 civil demand letters a month to consumers across the United States.

**6.  DESCRIBE IN DETAIL THE ENTERPRISE FOR EACH RICO CLAIM. A DESCRIPTION OF THE ENTERPRISE SHALL:**

**a.  State the names of the individuals, partnerships, corporations, associations, or other entities constitution the enterprise.**

The following "persons" constitute a union or group of individuals associated in fact and referred to in Plaintiff's Complaint and herein as the PLFE: (1) the Palmer Law Firm; (2) various retailers; (3) local attorneys from around the United States; and (4) RIC.

**b.  Describe the structure, purpose, roles, function and course of conduct of the enterprise.**

The PLFE is an ongoing organization.  The members of the Enterprise share the common purpose of working together to extort millions of dollars from consumers through demand letters that intimidate consumers by using bold and underlined text that falsely implies a local attorney has conducted a professional evaluation of the claim against them, which claim pertains to an alleged incident of shoplifting at a retail store, and threatens a civil action under civil recovery statutes if a predetermined fee, set forth in the demand letter, is not paid.  Defendant implemented and executed its scheme through mail and wire fraud.

In order to successfully extort money from consumers, the Palmer Law Firm uses a system that allows it to manipulate and control civil theft collection threats to customers and conceal the true facts about that collection.  The PLFE provides the Palmer Law Firm with this system and ability, and its control and participation in it is necessary for the successful operation of the scheme.

Through this scheme, the Palmer Law Firm has contracted with retailers to provide the Palmer Law Firm with information on consumers detained for shoplifting in the retailers' stores.  The customer information is processed using software developed by

RIC and other third party entities in order to generate form demand letters. The Palmer Law Firm then engages local attorneys, in exchange for a fee, to allow their signatures to be electronically affixed on the form demand letters, which are mailed without attorney consultation or review. The Palmer Law Firm then mails these demand letters to consumers through the United States Postal Service and other methods. The Palmer Law Firm has engaged RIC and other third part entities to develop automated systems for collecting the demanded amounts and, in return, the Palmer Law Firm has agreed to and is using those systems to process claims and demand payments.

**c. State whether any defendants are employees, officers, or directors of the enterprise.**

Defendant is not an employee, officer or director of the Enterprise.

**d. State whether any defendants are associated with the enterprise, and if so, how.**

Defendant is associated with the Enterprise and participates in and controls the affairs of the Enterprise. Defendant's control of and participation in the Enterprise is necessary for the successful operation of the extortion scheme. While the Defendant participates in the Enterprise and is part of it, the Defendant also has an existence separate and district from the Enterprise.

**e. Explain how each separate defendant participated in the direction or conduct of the affairs of the enterprise.**

The Defendant controls and operates the Enterprise as follows:

(1) By developing itself, and through the PLFE, a scheme whereby retailers provide the Palmer Law Firm with consumer information;

(2) By agreeing that this consumer information would be processed using software developed by RIC and other third party entities in order to generate a form demand letter;

(3) By engaging local attorneys to allow their names to be electronically affixed on the form demand letters without attorney review;

(4) By agreeing to use and using millions of these form letters to demand from consumers a computer-generated amount via the U.S. mail and other methods;

(5) By engaging and paying RIC and other third party entities to develop automated systems for collecting the demanded amounts; and

(6) By agreeing to and using those systems to process claims and demand payments.

  **f. State whether you allege (i) that the defendants are individuals or entities separate from the enterprise, or (ii) that the defendants are the enterprise itself; or (iii) that the defendants are members of the enterprise; and**

Defendant is a member of the Enterprise but has an existence separate and distinct from the Enterprise.

  **g. If you allege any defendants to be the enterprise itself, or members of the enterprise, explain whether such defendants are perpetrators, passive instruments, or victims of the racketeering activity.**

Plaintiff does not allege that the Defendant is the Enterprise itself. Rather, Plaintiff alleges that the Defendant is a member of the PLFE and is a perpetrator of the alleged racketeering activity.

7. **STATE WHETHER YOU ALLEGE, AND DESCRIBE IN DETAIL, HOW THE PATTERN OF RACKETEERING/CRIMINAL ACTIVITY AND THE ENTERPRISE ARE SEPARATE OR HAVE THEY MERGED INTO ONE ENTITY.**

As set forth in Sections 4, 5, 6 and 14, the Enterprise is an association which has an ascertainable structure separate and apart from the pattern or racketeering activity in which the Enterprise engages.

8. **DESCRIBE THE RELATIONSHIP BETWEEN THE ACTIVITIES AND THE PATTERN OF RACKETERRING/CRIMINAL ACTIVITY. DESCRIBE HOW THE RACKETERERING/CRIMINAL ACTIVITY DIFFERS FROM THE USUAL AND DAILY ACTIVITIES OF THE ENTERPRISE, IF AT ALL.**

The pattern or racketeering activity does not differ from the legitimate activities of the Palmer Law Firm Enterprise. The Defendant has influenced and controlled the activities of the Enterprise, and uses it as an instrument to defraud or obtain money by means of false pretenses, representations or promises.

9. **DESCRIBE WHAT BENEFITS, IF ANY, THE ENTERPRISE AND EACH DEFENDANT RECEIVED FROM THE PATTERN OF RACKETEERING/CRIMINAL ACTIVITY.**

Defendant has benefited greatly from its racketeering activity. The benefits received by the Defendant include increased profits based on the extortion of millions of dollars from consumers through demand letters that threaten civil action under civil recovery statutes related to alleged instances of retail theft.

10. **DESCRIBE THE EFFECT OF THE ENTERPRISE'S ACTIVITIES ON INTERSTATE OR FOREIGN COMMERCE.**

The activities of the Enterprise are national in scope. In fact, as set forth above, Defendant, on average, mails between 80,000 and 120,000 demand letters a month, more than one million demand letters a year, that extort millions of dollars from consumers

from all over the United States. Accordingly, the Enterprise substantially impacts the economy and interstate commerce. Defendant also uses the mail and other facilities of interstate commerce to perpetrate the fraud.

**11.  IF THE COMPLAINT ALLEGES A VIOLATION OF 18 U.S.C. § 1962(A) OR § 722.103(1), FLA. STAT., PROVIDE THE FOLLOWING INFORMATION:**

**a.  Describe the amount of income/proceeds derived, directly or indirectly, from a pattern of racketeering/criminal activity, or through the collection of an unlawful debt;**

Plaintiff does not allege a violation of 18 U.S.C. § 1962(a) or Fla. Stat.§ 772.301(1).

**b.  State who received the income/proceeds derived from the pattern of racketeering/criminal activity or through the collection of an unlawful debt and the date of that receipt;**

*See* Plaintiff's response to Section 11.a. above.

**c.  Describe how and when such income/proceeds were invested or used in the acquisition of the establishment or operation of the enterprise;**

*See* Plaintiff's response to Section 11.a. above.

**d.  Describe how you were directly injured by the investment or use; and**

*See* Plaintiff's response to Section 11.a. above.

**e.  State whether the same entity is both the liable "person" and the "enterprise" under the § 1962(a)/§ 772.103(a) claim.**

*See* Plaintiff's response to Section 11.a above.

**12.  IF THE COMPLAINT ALLEGES A VIOLATION OF 18 U.S.C. § 1962 (b) OR § 772.103(2), FLA. STAT., PROIVDE THE FOLLOWING INFORMATION:**

Plaintiff does not allege a violation of 18 U.S.C. §§ 1962(a), 1962(b) or of § 772.103(2), Fla. Stat.

    **a. Describe in detail the acquisition or maintenance of any interest or control of the enterprise.**

*See* Plaintiff's response to Section 12 above.

    **b. Describe when the acquisition or maintenance of an interest in or control of the enterprise occurred.**

*See* Plaintiff's response to Section 12 above.

    **c. Describe how you were directly injured by this acquisition or maintenance of an interest in or control of the enterprise; and**

*See* Plaintiff's response to Section 12 above.

    **d. State whether the same entity is both the liable "person" and the "enterprise" under the § 1962(b)/§ 772.103(2) claim.**

*See* Plaintiff's response to Section 12 above.

**13. IF THE COMPLAINT ALLEGES A VIOLATION OF 18 U.S.C. § 1962 OR § 772.103(3), FLA. STAT. PROVIDES THE FOLLOWING INFORMATION:**

    **a. State who is employed by or associated with the enterprise;**

The following "persons" are associated with the PLFE: (1) the Palmer Law Firm; various retailers; (3) local attorneys from around the United States; and (4) RIC. *See* response to Section 6 above.

    **b. Describe what each such person did to conduct or participate in the enterprise's affairs.**

*See* response to Section 6 above.

    **c. Describe how you were directly injured by such person's conducting or participating in the enterprise's affairs; and**

Plaintiff and the Class Members have been and continue to be proximately and directly injured economically by Defendant's fraudulent scheme to extort millions of dollars from consumers through demand letters. Defendant's demand letters falsely state

that a local attorney has reviewed the claim and that if the consumer does not proffer payment of the demanded sum, the Defendant will initiate a civil action under various civil recovery statutes. Moreover, Class Members are directly injured every time Defendant extorts money from them.

Plaintiff was directly injured on or about March 14, April 1, and April 28, 2008 when Defendant mailed to Plaintiff demand letters that threatened civil action against Plaintiff if she did not submit payment of the amount stated in the demand letter.

> **d. State whether the same entity is both the liable "person" and the "enterprise" under the § 1962(c)/§ 772.103(3) claim.**

Defendant is a "person" within the meaning of 18 U.S.C. § 1961(c). Defendant is a member of the Enterprise, but also has an existence separate and distinct from the Enterprise.

**14. IF THE COMPLAINT ALLEGES A VIOLATION OF 18 U.S.C. § 1962(d) OR § 772.103(4), DESCRIBE IN DETAIL THE CONSPIRACY, INCLUDING THE IDENTITY OF THE CO-CONSPIRATORS, THE OBJECT OF THE CONSPIRACY, AND THE DATE AND SUBSTANCE OF THE CONSPIRATORIAL AGREEMENT.**

Since as early as 1992, the Defendant devised, implemented and coordinated a fraudulent scheme to extort millions of dollars from consumers through demand letters that intimidate consumers by falsely implying that a local attorney has conducted a professional evaluation of the claim against them, which pertains to an alleged incident of shoplifting at a retail store, and threatens a civil action under civil recovery statutes if a predetermined fee, set forth in the demand letter, is not paid. A local attorney, however, does not review the claim and the Defendant rarely, if ever, files a civil action against consumers.

In order to successfully perpetrate this scheme, Defendant worked with various retailers, local attorneys from around the United States and RIC. Accordingly, the Defendant and each member of the conspiracy, with knowledge and intent, agreed to the overall objective of the conspiracy, agreed to commit acts of fraud to relieve Plaintiff and the Class Members of their money, and actually committed such acts.

To effectuate the conspiracy, the Palmer Law Firm organized the PLFE, to provide the Palmer Law Firm with the system and ability to extort millions of dollars from consumers under civil recovery statutes. As evidence of the conspiracy, the Palmer Law Firm contracts with various retailers to send consumers detained for shoplifting form letters that threaten civil action if a computer-generated amount set forth in the demand letters is not paid. In return, the Palmer Law Firm receives a percentage of the amount recovered, usually between 18-30%, and the retailers receive the balance. Accordingly, the various retailers that contract with the Palmer Law Firm regularly send lists of individuals detained in its stores, which include the customer's name, address, age and additional information pertaining to the detention.

The conspiracy requires computer software than can process the information contained on the retailers' lists and generate form demand letters that automatically calculate the maximum amount the Palmer Law Firm can recover under such statutes. As evidence of the conspiracy, the Palmer Law Firm contracts with RIC and other third party entities to develop software that allows the Palmer Law Firm to automatically generate the form demand letters.

In order to successfully effectuate the conspiracy and post volumes of letters nationwide, including states in which the Palmer Law Firm is not authorized to practice

law, the Palmer Law Firm developed a scheme whereby it pays local attorneys, usually solo practitioners, a few hundred dollars a month for the right to electronically stamp their signatures on the millions of form demand letters posted to consumers. The Palmer Law Firm hires these various local attorneys over the telephone from the Palmer Law Firm's Orlando, Florida office. The local attorneys, however, never review the letters before they are mailed out and have no meaningful interaction with the consumer. Instead, these attorneys simply lend their names and bar numbers in exchange for a fee to the Palmer Law Firm.

Once the form demand letter contains the electronic signature of a local attorney, the Palmer Law Firm posts the form demand letter through the United States Postal Service and/or through other methods. The Palmer Law Firm's Orlando office generates and mails between 80,000 and 120,000 form demand letters each month, over a million letters each year.

Every form demand letter threatens a civil action against the consumer even though the Palmer Law Firm has filed few, if any, civil actions on behalf of its retail clients. Moreover, every letter intimidates the consumer by using bold and underlined text that falsely implies that a local attorney has conducted a professional evaluation of the claim against them and threatens the possibility that the sheriff will personally come to their door.

Once consumers receive the demand letter they are instructed to submit payment over the internet using a credit or debit card at www.palmerpay.com or to mail a check in the amount demanded to the Palmer Law Firm. In order to process payment, the Palmer

Law Firm engaged and paid RIC and other third party entities to develop automated systems for collecting the demanded amounts.

The Palmer Law Firm's misrepresentations, acts of concealment and failures to disclose were knowing and intentional, and made for the purpose of deceiving Plaintiff and the Class Members and obtaining their property for the Palmer Law Firm's gain. Moreover, the Palmer Law Firm either knew or recklessly disregarded the fact that the misrepresentations and omissions described above were material, and Plaintiff and the Class Members relied on the misrepresentations and omissions. As a result, the Palmer Law Firm has obtained money and property belonging to the Plaintiff and the Class Members, and Plaintiff and the Class Members have been injured in their business or property by Defendant's overt acts of mail and wire fraud.

**15.     DESCRIBE THE INJURY TO BUSINESS OR PROPERTY.**

Plaintiff and the Class Members have been and continue to be proximately and directly injured every time Defendant mails a form demand letter that falsely states a local attorney has reviewed the claim against the consumer and threatens a civil action under civil recovery statutes if payment is not submitted. In addition, Plaintiff and the Class Members are injured economically by Defendant's fraudulent scheme to extort millions of dollars from consumers through demand letters that threaten civil actions under civil recovery statutes related to alleged instances of retail theft. In addition, Plaintiff and Class Members have reasonably relied on the misrepresentations made in the civil demand letters to their detriment. *See* also Sections 4, 5, 11 and 13 above.

16. **DESCRIBE THE NATURE AND EXTENT OF THE RELATIONSHIP BETWEEN THE INJURY AND EACH SEPARATE RICO VIOLATION.**

A Plaintiff or Class Member is injured each time the Defendant mails Plaintiff or Class Member a demand letter that falsely states a local attorney has reviewed the claim against the consumer and that a civil action will be filed if the consumer fails to tender payment of the demanded amount. In addition, the Class Members are directly injured each time they submit payment to the Palmer Law Firm based on the amount calculated in the demand letters. Through this scheme, Defendant has extorted millions of dollars from consumers through such demand letters.

17. **FOR EACH CLAIM UNDER A SUBSECTION OF § 1962 OR § 772.103, LIST THE DAMAGES SUSTAINED BY REASON OF EACH VIOLATION, INDICATING THE AMOUNT FOR WHICH EACH DEFENDANT IS LIABLE.**

Plaintiff and the Class Members seek compensatory damages for losses sustained as a result of Defendant's scheme, subject to trebling pursuant to 18 U.S.C. § 1964(c). Plaintiffs and Class Members also seek declaratory and injunctive relief.

18. **PROVIDE ANY ADDITIONAL INFORMATION YOU FEEL WOULD BE HELPFUL TO THE COURT IN PROCESSING YOUR RICO CLAIM.**

No additional information is provided at this time. However, Plaintiff will attempt to answer any questions or to provide any additional information the Court may deem beneficial.

Respectfully submitted this 23rd day of July, 2008.

/s/Adam M. Moskowitz

Lance Harke, Esq.
Allison Harke, Esq.
HARKE & CLASBY LLP
155 S. Miami Ave., Suite 600
Miami, Florida 33130

Adam M. Moskowitz, Esq. (F.B. 984280)
Thomas A. Tucker Ronzetti, Esq. (F.B. 965723)
KOZYAK TROPIN & THROCKMORTON, P.A.
2525 Ponce de Leon , 9th Floor
Coral Gables, Florida 33134
T: 305-372-1800  / F: 305-372-3508

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing has been served via  transmission of Notices of Electronic Filing generated by CM/ECF  on July 23, 2008  and was filed with the Clerk of the Court using CM/ECF.

/s/Adam M. Moskowitz