**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO: 08-21843-CIV-MORENO/TORRES**

VERONICA KELLY, a citizen of Pennsylvania,
LIL SIMON, a citizen of Florida and
RON BAUM, a citizen of Florida,
individually and on behalf of all others
similarly situated,

             Plaintiffs,                                **CLASS ACTION**

vs.

PALMER, REIFLER & ASSOCIATES, P.A.,
a Florida partnership

             Defendant.
_____/

**AMENDED CLASS ACTION COMPLAINT**

      Plaintiffs Veronica Kelly, Lil Simon and Ron Baum, individually and on behalf of all others similarly situated, bring this action against Palmer, Reifler & Associates, P.A. (hereinafter "the Palmer Law Firm").

**I.**  **BACKGROUND FACTS**

      1.      This case is brought on behalf of innocent persons across the country against the Palmer Law Firm to stop them from sending millions of deceptive, unfair and oppressive form civil recovery demand letters and to recoup the tens of millions of dollars they have extorted for themselves and their retail clients.

      2.      In the late 1980s, large retailers hired lobbyists to encourage state legislatures across the country to enact what are known as "civil recovery statutes," touted as a method to recoup losses from retail theft. This legislation allows retailers to seek significant civil damages and penalties from consumers that have committed retail theft. The theory behind the legislation is that retailers

can keep prices lower and recoup some of their losses by placing the cost for retail theft on those who have actually shoplifted.  All fifty states have since passed civil recovery statutes.

3.      The Palmer Law Firm has abused this legislation, however, by creating a massive collection mill whereby hundreds of thousands of letters are generated each and every month and sent to consumers across the nation without any attorney review.  These generic form letters are meant to harass, intimidate and coerce consumers into paying a large fine by threatening civil action (which they have no intention of filing) by a local attorney (that has no involvement in the case) and a visit from the "sheriff" (which they know won't happen).

4.      The Palmer Law Firm Enterprise and scheme (as defined below) is complicated but very efficient.  The Palmer Law Firm joined forces with non-lawyers who had experience in retail loss prevention and implemented an intricate nationwide scheme utilizing sophisticated computer software.  The Palmer Law Firm receives an electronic file from its retail clients each month with the names of consumers detained in the store and a minimal amount of data, including their age, the date of their detention, their address and the amount of the merchandise allegedly at issue.  *See* Transcript of Partner Natt Reifler, attached hereto as Exhibit A at 107,166,167.  The Palmer Law Firm uses the software to automatically generate a form demand letter based on that information that automatically calculates the demand amount and electronically affixes a local attorney's signature to the letter.  *Id*. at 125, 126.

5.      Palmer's Orlando office generates and mails between 80,000 and 120,000 form demand letters *each* month and over a million letters each year.  *Id*. at 61.  Clearly, this type of high-speed, automated review is done without any exercise of independent professional judgment by an attorney.  Moreover, the letters typically threaten allegations of "civil theft"-- allegations that require a heightened review -- and yet Palmer has not performed any review at all.

6.      Every form demand letter threatens a civil action against the consumer even though Plaintiffs have been unable to locate a single civil recovery case that the Palmer Law Firm has filed after sending these letters.  *See* form letters, attached hereto as Composite Exhibit B; *see also* Exhibit A at 35, 255.  These letters also intimidate consumers by using bold and underlined text that falsely implies that a local attorney has conducted a professional evaluation of the claim against them and threatening the possibility that a sheriff will personally come to their door.  Exhibit B. Despite the representations contained in the letters, the Palmer Law Firm in reality has no real intention of proceeding with actual litigation.

7.      The Palmer Law Firm has sold this scheme to most of the large retailers in this country by touting that they are "more effective" than the typical mill because of the "protections inherent in dealing with a law firm," such as the attorney-client privilege and the patina of legitimacy that a law firm lends to the collections process.  *See* screen shots of Palmer website dated June 24, 2008, attached hereto as Composite Exhibit C.  Also, the demand letters are sent from a local attorney with a local post office box which, according to Reifler, "tends to drive a higher level of urgency in the defendant's mind and can drive higher collection results." *Id.*

8.      The Palmer Law Firm has sold this scheme to over fifty (50) retail clients, the largest of which include major retailers Wal-Mart, JC Penney, K Mart and Walgreens.  Exhibit A at 28, 37. Each of these retailers has directly profited from this illegal scheme.

9.      The Palmer Law Firm has also profited greatly as a result of this scheme.  Since its inception, they have been paid millions and millions of dollars at the consumers' expense.  *See* Exhibit A at 30 (annual Palmer Law Firm income "under ten million a year").  And that is only Palmer's share.  The Palmer Law Firm has contracted with each of its retail clients for a percentage (ranging from 18% to 30%) of the income generated from this scheme.  *Id.* at 30, 31.  Like all

collection mills, the Palmer Law Firm has created a website for consumers to pay these exorbitant, unsubstantiated amounts on line at "Palmer Pay.com" using credit and debit cards and banking accounts.  *See* Exhibit C.

10.     The Palmer Law Firm has reaped huge profits by sending volumes of letters nationwide, including states in which they are not authorized to practice law.  In order to do this, the Palmer Law Firm came up with a plan whereby they pay local attorneys, usually sole practitioners, a few hundred dollars a month for the right to electronically stamp their signatures on the millions of letters they send.  Exhibit A at 33.  These attorneys do not review the letters before they are sent and have no meaningful interaction with the consumer.  Instead, they simply lend their names and bar licenses in exchange for a monthly fee.

11.     The other hurdle that the Palmer Law Firm had to overcome in order to maximize profits and succeed with its scheme was the Fair Debt Collection Practices Act ("FDCPA").  In a premeditated attempt to avoid all of the rules that protect consumers, the Palmer Law Firm asked for and obtained an informal advisory letter stating that their scheme was not governed by the FDCPA since they are not technically collecting a "debt" but instead seeking settlement of a tort offense.  *See* Exhibit D.  In so doing, the FTC did not in any way condone the Palmer Law Firm's scheme and did not offer an opinion on whether the scheme violates other laws.

12.     In fact, according to a commissioner from the FTC, one of the most frequently reported abuses by debt collectors -- that specifically includes law firms -- is the use of deceptively worded demand letters threatening criminal and civil legal action without any intention of proceeding with such actions.  *See* Exhibit E.  The FTC has filed numerous enforcement actions against law firms that send these types of form demand letters without performing a professional review of each case to confirm that the claim alleged is viable.

13.     Numerous courts across the country have held that similar demand letters are "deceptive" and "misleading" and may directly violate the FDCPA.  Moreover, courts may look to violations of statutes such as FDCPA when determining violations of Florida's Deceptive and Unfair Trade Practices Act.  The Palmer Law Firm's scheme, described herein, clearly violates FDCPA and as such, violates FDUTPA.

14.     This scheme has been challenged by consumers and bar committees across the country but has not been stopped, either because the wrong legal theory was used and/or the case was settled.  This lawsuit seeks to stop this practice, once and for all.

## II.  <u>JURISDICTION AND VENUE</u>

15.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, because this action arises under the laws of the United States, as it is an action alleging violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §1962.

16.     This Court also has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. §1332(d), because there are 100 or more class members and the aggregate amount in controversy exceeds $5,000,000.

17.     This Court has jurisdiction over the Palmer Law Firm because they are doing business in Florida, are licensed to practice law in Florida, and intentionally avail themselves of the Florida consumer market, including the Southern District of Florida.

18.     The Palmer Law Firm, its attorneys and over 90 employees are all based in Florida. Exhibit A at 16.  All of the form civil demand letters are generated and sent from the Orlando, Florida office.  *Id*. at 54.  The solo practitioners from other states are often (if not always) hired over the telephone from Florida, and merely lend their name to the form letters.  *Id*. at 19, 51.  However, these local attorneys have no substantive involvement in the review or processing of the form letters

and have no discretion as to whom they are sent.

19.     All communications between the Palmer Law Firm, the retailers and class members are conducted from the Orlando office. *Id.* at 56, 63. All payments from class members as result of this scheme are made to and processed by the Florida office.

20.     Venue is proper in this forum because at all times relevant hereto, a substantial portion of the practices complained of herein occurred in the Southern District of Florida and/or because the Palmer Law Firm has received substantial compensation as a result of doing business in the Southern District of Florida.  Moreover, the Palmer Law Firm, at all times material hereto, operated, conducted, engaged in and carried on a business venture in the Southern District of Florida and/or engaged in substantial activity within this state and district by routinely mailing the form civil theft demand letters to persons residing in the Southern District of Florida.

### III.  **THE PARTIES**

21.     Plaintiff Veronica Kelly, a Pennsylvania resident, has received numerous letters and phone calls from the Palmer Law Firm on behalf of J.C. Penny, demanding payment under her state's civil recovery statute. *See* Exhibit B.  The Palmer Law Firm sent these letters without review by any attorney before making this demand.  Ms. Kelly has informed the Palmer Law Firm that there is no basis for this claim, but they continue to send letters and call her.

22.     Plaintiff Lil Simon, a Florida resident, received the same or similar letters from the Palmer Law Firm on behalf of Wal-Mart, demanding payment under her state's civil recovery statute.  The Palmer Law Firm sent these letters without review by any attorney before making this demand.  Ms. Simon paid $280.00 to the Palmer Law Firm.

23.     Plaintiff Ron Baum, a Florida citizen residing in the Southern District of Florida, received the same or similar letters from the Palmer Law Firm on behalf of Macy's to his address in

the Southern District of Florida, demanding payment under the state civil recovery statute.  The

Palmer Law Firm sent this letter without review by any attorney before making this demand.  Mr.

Baum paid $200.00 to the Palmer Law Firm.

24.     Defendant the Palmer Law Firm is a Florida partnership, doing business throughout

this district.  Plaintiffs reserve the right to name additional defendants, including the individual

retailers that do business here in the Southern District of Florida, as soon as Plaintiffs have the

opportunity to conduct discovery.

## IV.  RICO ALLEGATIONS

**The Palmer Law Firm Enterprise**

25.     Plaintiffs, the class members and Defendant are "persons" within the meaning of 18

U.S.C. §1961(3).

26.     Based upon Plaintiffs' current knowledge, the following persons constitute a group of

individuals associated in fact that Plaintiffs refer to as the "Palmer Law Firm Enterprise" ("PLFE"):

(1) the Palmer Law Firm; (2) various retailers including, but not limited to, Macy's, J.C. Penney's,

and Wal-Mart that contract with the Defendant to generate the forms letters and collect the civil theft

amounts; (3) local attorneys from around the country that have contracted with Defendant to allow

them to automatically sign the form letters on their behalf; and (4) APIS Asset Protection

Information System, a web based data management tool that Defendant utilizes for loss prevention

data produced by the design team at RuMe Interactive Corporation and Learn it Solutions ("RIC") in

Farmingdale, NY.

27.     The PLFE is an ongoing organization which engages in, and whose activities affect, interstate commerce.

28.     While the participants are members of the PLFE, and are part of it, they also have an existence separate and distinct from the enterprise.

29.     In order to successfully extort money from consumers in the manner set forth above, the Palmer Law Firm uses a system that allows it to manipulate and control civil theft collection threats to customers and conceal the true facts about that collection.  The PLFE provides the Palmer Law Firm with that system and ability, and their control of and participation in it is necessary for the successful operation of their scheme.  The Palmer Law Firm controls and operates the PLFE as follows:

(a)     By developing themselves, and, through the PLFE, a scheme whereby the retailers provide the Palmer Law Firm with consumer information;

(b)     By agreeing that this consumer information would be processed using software developed by RIC and other third party entities in order to generate a form demand letter;

(c)     By engaging local attorneys to allow their names to be affixed on the form demand letters without attorney review;

(d)     By agreeing to use and using millions of these form letters to demand from consumers a computer-generated amount via the U.S. mail and other methods;

(e)     By engaging and paying RIC and other third party entities to develop automated systems for collecting the demanded amounts;

(f)      By agreeing to and using those systems to process claims and demand payments.

30.     As set forth above, the PLFE has an ascertainable structure separate and apart from the pattern of racketeering activity in which the Defendant engages.

CASE NO: 08-21843-CIV-MORENO/TORRES

**Predicate Acts**

31.     Section 1961(1) of RICO provides that "racketeering activity" includes any act indictable under 18 U.S.C. §1341 (relating to mail fraud) and 18 U.S.C. § 1343 (relating to wire fraud).  As set forth below, the Palmer Law Firm has engaged, and continues to engage, in conduct violating each of these laws to effectuate their scheme.

**Violations of 18 US.C. §§1341 and 1343**

32.     For the purpose of executing and/or attempting to execute the above described scheme to defraud or obtain money by means of false pretenses, representations or promises, the Palmer Law Firm, in violation of 18 U.S.C. § 1341, placed in post offices and/or in authorized repositories matter and things to be sent or delivered by the Postal Service, caused matter and things to be delivered by commercial interstate carrier, and received matter and things from the Postal Service or commercial interstate carriers, including but not limited to form demand letters.

33.     For the purpose of executing and/or attempting to execute the above described scheme to defraud or obtain money by means of false pretenses, representations or promises, the Palmer Law Firm, also in violation of 18 U.S.C. § 1343, transmitted and received by wire, matter and things which include but are not limited to form demand letters.

34.     The matter and things sent by the Palmer Law Firm via the Postal Service, commercial carrier, wire or other interstate electronic media include, *inter alia,* material containing false and fraudulent misrepresentations to consumers that purports to be a claim from a local attorney that has reviewed it, when it is not and threatens the filing of a civil lawsuit and a visit from the sheriff, with no actual intent to file such a lawsuit.

35.     Other matter and things sent through or received from the Postal Service, commercial carrier or interstate wire transmission by the Palmer Law Firm include information or communications in furtherance of or necessary to effectuate the scheme.

36.     The Palmer Law Firm's misrepresentations, acts of concealment and failures to disclose were knowing and intentional, and made for the purpose of deceiving Plaintiffs and the class and obtaining their property for the Palmer Law Firm's gain.

37.     The Palmer Law Firm either knew or recklessly disregarded the fact that the misrepresentations and omissions described above were material, and Plaintiffs and the class relied on the misrepresentations and omissions as set forth above.

38.     As a result, the Palmer Law Firm has obtained money and property belonging to the Plaintiffs and class members, and Plaintiffs and the class have been injured in their business or property by Defendant's overt acts of mail and wire fraud.

**Pattern of Racketeering Activity**

39.     Palmer Law Firm has engaged in a "pattern of racketeering activity," as defined by 18 U.S.C. §1961(5), by committing or at least two acts of racketeering activity, i.e., indictable violations of 18 U.S.C. §§1341 and 1343 as described above, within the past ten years.  In fact, the Palmer Law Firm has committed thousands of acts of racketeering activity.  Each act of racketeering activity was related, had a similar purpose, involved the same or similar participants and method of commission, had similar results and impacted similar victims, including Plaintiffs and class members.

40.     The multiple acts of racketeering activity Defendant has committed and/or conspired to commit, were related and amount to and pose a threat of continued racketeering activity, and

therefore constitute a "pattern of racketeering activity" as defined in 18 U.S.C. § 1961(5).

## V.  CLASS ACTION ALLEGATIONS

41.    Plaintiffs bring this action against Defendant pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure, and Local Rule 23.1 on behalf of herself and all other persons similarly situated.  Plaintiffs seek to represent the following classes:

### 1.  Injunctive Class

(FDUPTA and RICO claims only)

All individuals in the United States, who after June 26, 2004, received a letter from the Palmer Law Firm demanding civil damages pursuant to a state civil recovery statute.  The class excludes all persons that were or either sued by the Palmer Law Firm or convicted of retail theft.

### 2.  Monetary Class

All individuals in the United States, who after June 26, 2004, received a letter from the Palmer Law Firm demanding civil damages pursuant to a state civil recovery statute and made a payment.  The class excludes all persons that were either sued by the Palmer Law Firm or convicted of retail theft.

**Numerosity**

42.    The individual Class members are so numerous that joinder of all members is impracticable.  The Classes, upon information and belief, each consist of hundreds of thousands of customers, who can be identified in the business records maintained by the Defendant.  The precise number of Class members can only be obtained through discovery but the numbers are clearly more than can be consolidated in one complaint and impractical for each to bring suit individually.  Plaintiffs do not anticipate any difficulties in the management of the action as a class action.

**Commonality**

43.    This cause raises common questions of law and fact.  These common questions predominate over any questions that go particularly to any individual member of the Class.  Among

such common questions of law and fact are the following:

    a.   Whether Defendant has participated in a scheme to defraud or obtain money by means of false pretenses, representations or promises, in violation of 18 U.S.C. §1341 and 18 U.S.C. §1343;

    b.   Whether the Noerr-Pennington doctrine immunizes Defendant's actions;

    c.   Whether the PLFE constitutes an "enterprise" under RICO;

    d.   Whether the PLFE has committed a "pattern of racketeering activity" under RICO;

    e.   Whether Defendant's form demand letter and practice in sending it is a deceptive, unfair and/or unconscionable scheme in violation of FDUTPA;

    f.   Whether due to Defendant's uniform acts, as alleged herein, Defendant was unjustly enriched or received payments and/or monies that under principles of equity they cannot retain;

    g.   The amount of damages the Monetary Class has sustained as a result of the Defendant's wrongful conduct, and the proper measure of such damages.

**Typicality**

44.    Plaintiff Kelly is a member of the Injunctive Class.  She received at least three form letters and continues to receive phone calls and letters from the Palmer Law Firm.  *See* Exhibit B.

45.    Plaintiffs Simon and Baum are members of the Monetary Class because they received letters from and paid money to the Palmer Law Firm.  Plaintiffs' claims are typical of the claims of the class because of the similarity, uniformity, and common purpose of the unlawful conduct of the Defendant

**Adequacy of Representation**

46.    Plaintiffs are adequate representatives of the Class and will fairly and adequately protect the interests of the class.  Plaintiffs are committed to the vigorous prosecution of this action and have retained competent counsel, experienced in litigation of this nature, to represent them.

There is no hostility between Plaintiffs and the unnamed class members. Plaintiffs anticipate no difficulty in the management of this litigation as a class action.

47.    Plaintiffs have chosen the law firms of Kozyak, Tropin & Throckmorton, Harke & Clasby LLP, and Spector, Roseman & Kodroff, to represent them in this matter. These firms are very experienced in class action litigation. They also have the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

### Requirements of Fed. R. Civ. P. 23(b)(3)

48.    The questions of law or fact common to the claims of Plaintiffs and of each Class member predominate over any questions of law or fact affecting only individual members of the class. All claims by Plaintiffs and the unnamed Class members are based on the same basic scheme same form demand letter generated by Defendant and sent to class members.

49.    Common issues predominate when, as here, liability can be determined on a class-wide basis, even when there may be some individualized damage determinations.

50.    Where, as in this case, the liability issue is common to the class, common questions predominate over individual questions.

### Superiority

51.    A class action is superior to thousands of individual actions in part because of the following non-exhaustive factors:

    a.    Joinder of all Class members would create extreme hardship and inconvenience for the affected persons as they reside all across the country.

    b.    Individual claims by the class members are impractical because the costs to pursue individual claims far exceed the value of what any one Class member has at stake. As a result, individual Class members have no interest in prosecuting and controlling separate actions.

    c.    There are no known individual Class members who are interested in individually controlling the prosecution of separate actions.

    d.      The interests of justice will be well served by resolving the common disputes of potential Class members in one forum.

    e.      Individual suits would not be cost effective.

    f.      The action is manageable as a class action.

<u>**COUNT I**</u>

<u>**DAMAGES FOR VIOLATION OF RICO, 18 U.S.C. § 1964(C)**</u>

52.     Plaintiffs incorporate and reallege paragraphs 1-51 above as if fully set out herein.

53.     This claim for relief arises under 18 U.S.C. § 1964(c).

54.     In violation of 18 U.S.C. § 1962(c), Defendant has, as set forth above, conducted, or participated directly or indirectly in the conduct of, the affairs of the PLFE through a pattern of racketeering activity and through the use of the wire and mail.

55.     In violation of 18 U.S.C. § 1962(d), Defendant has, as set forth above, conspired to violate 18 U.S.C. § 1962(c) by conducting, or participating directly or indirectly in the conduct of, the affairs of the PLFE through a pattern of racketeering activity and through the use of the wire and mail.

56.     As a direct and proximate result, Plaintiffs and class members have been injured in their business or property by both the predicate acts which make up the Defendant's patterns of racketeering activity and their investment and reinvestment of income there from to operate, expand and perpetuate the PLFE through the use of the wires and mail and specifically mail fraud.

57.     Specifically, Plaintiffs and class members have been injured in their business or property by the PLFE's civil theft demands and the subsequent payment of those demands.

     **WHEREFORE**, Plaintiffs and Monetary Class members seek a judgment in their favor against the Palmer Law Firm for treble the amount of damages suffered by them

in the form of payments made to Defendant as a result of its predicate acts and violations of Sections 1962(c) and (d) of RICO, together with treble the amount of interest due on payments delayed or withheld through the Defendant's predicate acts and RICO violations.

## COUNT II

### DECLARATORY AND INJUNCTIVE RELIEF UNDER 18 U.S.C. §1964(A)

58.     Plaintiffs incorporate and reallege paragraphs 1-51 above as if fully set out herein.

59.     This claim arises under 18 U.S.C. § 1964(a), which authorizes the district courts to enjoin violations of 18 U.S.C. § 1962, and under 28 U.S.C. § 2201 which authorizes associated declaratory relief.

60.     As set forth in Count I above, Defendant has violated 18 U.S.C. §§ 1962(c) and (d), and will continue to do so in the future.

61.     Enjoining the Defendant from committing these RICO violations in the future and/or declaring their invalidity is appropriate as the Plaintiffs and the Class have no adequate remedy at law, and will, as set forth in paragraphs 1-51 above, suffer irreparable harm in the absence of the Court's declaratory and injunctive relief.

**WHEREFORE**, Plaintiffs and the members of the Class seek injunctive relief preventing the Palmer Law Firm from employing automated processing techniques that allow for improper and inadequate review prior to generating civil theft demand letters and from sending letters that contain misrepresentations and omissions.  Plaintiffs and the Class members further pray for an award of attorneys fees where permitted by law and such other relief as the Court deems just and proper.

CASE NO: 08-21843-CIV-MORENO/TORRES

## COUNT III

## MONEY HAD AND RECEIVED

62.     Plaintiffs reallege and incorporate Paragraphs 1 through 51 of this Complaint as if fully set forth herein.

63.     The Palmer Law Firm obtained money and has attempted to collect amounts which it ought to return to the Class in violation of Florida law.  The Palmer Law Firm should also cease its attempts to collect such amounts.

64.     The Palmer Law Firm, in its Florida office, has received money from Plaintiffs and class members through unfair and unreasonable practices, and thus is obliged to refund the money. The Defendant has taken undue advantage of the Class members.

65.     The Palmer Law Firm has also obtained money from Plaintiffs and class members through unfair, unreasonable, and unconscionable practices conducted from its Florida office; practices that ultimately confer no true benefit upon Class members and oblige them to refund the money.  The Palmer Law Firm has taken undue advantage of Plaintiffs and the class members in this respect as well.

66.     Thus, the Palmer Law Firm must refund such amounts that were charged and collected from Plaintiffs and class members.  The Defendant should also be required to forever cease to attempt to collect these unreasonable amounts.

**WHEREFORE**, Plaintiffs and the Monetary Class demand judgment against the Palmer Law Firm for compensatory damages, pre and post judgment interest, attorneys' fees, declaratory and injunctive relief, costs incurred in bringing this action, and any other relief the Court deem just and proper.

## COUNT IV

## UNJUST ENRICHMENT

67.     Plaintiffs reallege and incorporate Paragraphs 1 through 51 of this Complaint as if fully set forth herein.

68.     The Palmer Law Firm has received, and continues to receive, a benefit at the expense of the Monetary Class, and have knowledge thereof.

69.     The Defendant has deceptively charged, attempted to collect and collected amounts that they have unjustly retained at the expense of the members of the Monetary Class in violation of Florida law.

70.     The circumstances are such that it would be inequitable for the Palmer Law Firm to retain the benefit without paying the value thereof to the members of the Class.

**WHEREFORE**, Plaintiffs and the Monetary Class demand judgment against the Palmer Law Firm for compensatory damages, interest, attorney's fees, declaratory and injunctive relief, costs incurred in bringing this action, and any other relief the Court deem just and proper.

## COUNT V

## VIOLATION OF FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

71.     Plaintiffs reallege and incorporate Paragraphs 1 through 51 of this Complaint as if fully set forth herein.

72.     Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. §501.201, et seq. ("FDUTPA"), prohibits "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. §501.204.

73.     The stated purpose of FDUTPA is to protect persons from "those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. §501.202.

74.     The Defendant has engaged and engages in the conduct of trade and/or commerce in Florida and the deceptive conduct alleged herein was developed and implemented in Florida and then carried out across the country, including the Southern District of Florida.

75.     The policies, acts and practices alleged herein were intended to result and did result in the payment of millions of dollars.  Specifically:

     a.     Defendant engaged in unfair and deceptive practices by sending out millions of form letters without any attorney review or determination that there was good cause to send them;

     b.     Defendant engaged in deceptive practices by falsely representing that a civil lawsuit would be filed against the consumer without any intention of filing one;

     c.     Defendant engaged in unfair and deceptive practices by intimidating consumers with a threat that the Sherriff would come to their home if they did not make a payment, with full knowledge that this was false;

     d.     Defendant engaged in unfair and deceptive practices by paying out of state attorneys a nominal fee to use their computer generated signature and a local post office box, thereby making the consumer believe that a local lawyer was involved, when the local lawyer had no involvement whatsoever in the process.

76.     The use of deceptively worded demand letters threatening criminal and civil legal action without any intention of proceeding with such actions and without any prior review has been found by the FTC to be inherently unfair and deceptive.

77.     Defendant's scheme was conceived, devised and carried out in Florida, which has an interest in prohibiting violations of FDUTPA within the state and then carried out across the country.

CASE NO: 08-21843-CIV-MORENO/TORRES

78.     Plaintiffs and the Class members are persons that have sustained damages as a direct and proximate result of Defendant's unfair and unconscionable practices.  Fla. Stat. §501.211(2) provides Plaintiffs and the Class members a private right of action against the Defendant, and entitles the Monetary Class to recover their actual damages and the Injunctive class to injunctive relief, including an order that Defendant immediately cease and desist this unconscionable practice.

79.     Plaintiffs and the Class members have suffered and will continue to suffer irreparable harm if the Defendant continues to engage in such deceptive and unfair practices.

**WHEREFORE,** Plaintiffs and Class members demand judgment against the Palmer Law Firm for compensatory damages, pre and post judgment interest, attorney's fees, injunctive relief, costs incurred in bringing this action, and any other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs request a jury trial on any and all counts for which trial by jury is permitted by law.

Respectfully submitted,

s/ Lance A. Harke
Lance A. Harke, P.A.
Florida Bar No.: 863599
lharke@harkeclasby.com
Alison C. Harke, Esq.
Florida Bar No.: 871291
aharke@harkeclasby.com
HARKE & CLASBY LLP
155 S. Miami Ave., Suite 600
Miami, Florida 33130
T: (305) 536-8220  / F: (305) 536-8229

Additional Counsel:

Jeffrey L. Kodroff
SPECTOR ROSEMAN & KODROFF, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA 19103
T : (215) 496-0300

s/ Lance A. Harke
Adam M. Moskowitz, Esq.
Florida Bar N. 984280
amm@kttlaw.com
Thomas A. Tucker Ronzetti, Esq.
Florida Bar No. 965723
tr@kttlaw.com
KOZYAK,TROPIN,&
THROCKMORTON, P.A.
2525 Ponce de Leon , 9th Floor
Coral Gables, Florida 33134
T: 305-372-1800  / F: 305-372-3508

CASE NO: 08-21843-CIV-MORENO/TORRES

### <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 5th[h] day of September, 2008, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing documents is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic filing.

s/ Lance A. Harke         

CASE NO: 08-21843-CIV-MORENO/TORRES

## SERVICE LIST

Richard Lydecker, Esq.
Carlos De Zayas, Esq.
Alan Feldman, Esq.
LYDECKER, LEE, BEHAR, BERGA &
DE ZAYAS, L.L.C.
Attorneys for Defendants
1201 Brickell Avenue, 5th Floor
Miami, Florida 33131
(305) 416-3180 - Telephone
(305) 416-3190 – Facsimile

*Attorneys for Defendants*
*Served Via CM/ECF Transmission*

s/ Lance A. Harke