# EXHIBIT D



# Employee Theft: What You Don't Know Can Hurt You

By Reifler, Natt O.
Publication: Franchising World
Date: Wednesday, October 1 2008

You're a small-business owner and you've caught an employee stealing. What do you do?

According to a recently-completed survey of small-business owners by Focus Research, Inc., the answer was "as little as possible."

While small-business owners reported a wide variety of measures to prevent employee theft, often at considerable costs, the consensus was clear: doing more to recoup theft losses equates to spending more time and money than it is worth. Corporate retail chains, however, commonly address employee theft incidents with demand letters, settlement negotiations and even legal action, recouping losses and establishing workplace standards in the process. The surprising part is that this lack of action by small-business owners is not, as one might suspect, the result of a resource gap. Instead, it appears to be the result of an information gap. While small-business owners were very aware of steps they could take to try to prevent theft, they were less aware of what they could do to recoup losses after a theft had occurred.

$40 Billion Dollar Problem

U.S. retail chains have been on the front line of a national theft problem for many years, with theft accounting for the overwhelming portion of the $40 billion dollars of annual inventory losses. Trends suggest this figure is on the rise. Nearly half of these losses are attributed to employee theft alone.

Over the years, retailers have come to understand that when it comes to theft, any theft, one gets what one accepts. Wal-Mart founder, Sam Walton, famously coined theft "the profit killer." He was right.

Business operators of all sizes understand the devastating math behind theft. Given a hypothetical service or merchandise profit margin of 20 percent, five times more must be sold just to make up the profit margin of one single stolen item. Most

businesspeople know that profit margins are often considerably less than that number. However, the true cost of theft goes beyond the loss of product and also includes the costs incurred in the efforts to prevent, detect and document it. This was certainly understood by the former retailer Montgomery Ward, often considered to have one of the more robust and innovative loss-prevention programs among contemporary retailers. Today's progressive retailers do not consider loss prevention or asset protection, as it is often called, as a separate department, but a part of each department of the organization; a mindset integral to the culture of their organization. Corporate retailers used to experience higher rates of theft. But, out of that learning experience, they developed and refined the science of loss prevention.

What is Loss Prevention?

Also known as asset protection, retail-loss prevention is simply the profession responsible for reducing inventory losses, known as "shrink" or "shrinkage," of all kinds from a store. Shoplifting and employee theft are the two largest categories of shrink. While much of the focus, and cost, of loss prevention involves all the methods and measures to prevent theft, recovery is every bit a part of loss prevention and a very important element for corporate retailers. However, recovery is the element most often missing from the loss-prevention efforts of small businesses.

Civil Recovery's Role

Civil recovery allows businesses, large or small, to pursue and collect settlements from people who steal from them. Civil recovery statutes are civil laws, specific to each state, that dictate how businesses can pursue these losses from offenders. These laws often take into account that the total cost of theft; shoplifting could be said to extend well beyond just the value of the item(s) stolen, and include the considerable cost of the efforts to prevent these losses. This means that whether or not a stolen item is recovered, the business victim is most often entitled to request a civil penalty from the offender to help offset these extended costs.

Through civil recovery, business owners can recover losses due to employee theft or embezzlement, as well as shoplifting in addition to or sometimes as an alternative to taking criminal action. These statutes often recognize the impracticality of criminal prosecution in every incident of theft, which would further tax an already over-burdened criminal court system, another cost law-abiding taxpayers would be forced to pay.

In addition to helping business owners recover these losses, civil recovery plays a vital role in preventing and deterring this type of activity among employees and consumers. Civil recovery has become an important step in the loss prevention continuum because businesses that implement policies establishing clear and consistent consequences for theft experience less theft. Employees who are inclined to steal are far less inclined to work for an employer with clear and tough policies on theft and recovery processes in place when there are many other easier targets from which to choose. Word travels fast among employees of where it is easy to steal and where it is not.

Civil Recovery: Why is It So Often Overlooked by Small Business?

Given the petty nature of most employee theft incidents, most small-business owners don't feel that the time, effort and cost required to pursue criminal and or civil action is worth the perceived benefit. For most, employee termination is the only recourse. Many small-business owners believe that theft losses are simply a cost of doing business.

The inconvenient truth is that the better corporate retailers become at creating a theft-free work environment, the bigger the theft target their small-business counterparts become, as theft offenders are known to seek the path of least resistance. Because of their financial resources, larger retailers are better equipped to temporarily sustain theft losses. The U.S. Department of Commerce estimates that nearly one-third of all bankruptcies are caused by employee theft. It is no surprise that small businesses are disproportionately affected. And yet, the irony is that the awareness of civil laws and civil recovery programs that help businesses address employee theft are least often in the hands of those that need it the most: small-business owners.

In the previously mentioned survey, few respondents knew about civil recovery statutes. Civil recovery programs have been common practice among many corporate retail chains for nearly 20 years. Yet, only a fraction of small-business owners surveyed were aware these laws even existed. Why? What do corporate retail chains know that small businesses, including franchisees, do not? How can small businesses use these same laws to their advantage?

How Can Small Business Owners Take Advantage of Civil Recovery?.

There are two ways for a small business to begin a civil-recovery program. First, it is lawful for business owners to prepare and pursue their own civil claims against theft offenders. This requires knowledge of a particular state's civil statutes and the time and effort to pursue these claims. While a viable and admirable means of pursuing theft losses, the catch is that this is also the very type of additional work business owners report not having the time to do.

Second, if not pursued by the business owner, civil recovery should only be pursued by a law firm, preferably one with experience in civil-recovery law. Corporate retailers often employ the services of a law firm to represent them on a contingency-fee basis. Therefore, the retailer only pays a fee when the law firm's recovery efforts on their behalf prove successful. In exchange for the contingency fee, the law firm manages the entire civil-recovery process on behalf of the client. So, the process requires minimal time on the part of the retail client, as well. This civil-recovery model is a very viable option for small-business owners and franchisees short on time and resources.

(A Web site, PalmerWeb.com, was developed by the author's law firm with this model in mind. The online civil recovery service is a subscription-based portal that provides small business access to the legal services of a civil-recovery law firm.)

There are many great resources for information on both civil recovery and loss-prevention including:

* Loss Prevention Foundation: The Loss Prevention Foundation is a not-for-profit organization created to serve the loss-prevention industry. The foundation provides relevant, convenient and challenging educational resources. Its programs are designed to give individuals the opportunity to gain valuable knowledge about retail, business, leadership and loss prevention. More information can be found on the foundation's Web site: www.losspreventionfoundation.org.

* Loss Prevention Magazine: Loss Prevention is the only magazine dedicated to the loss prevention profession. More information and articles can be found on the magazine's Web site: www.losspreventionmagazine-com.

Small-business owners should explore their options for taking advantage of this important step in the loss-prevention continuum. Employee theft has serious consequences to the success or failure of a business, and it should be treated accordingly. Contrary to popular belief, doing something about employee theft doesn't have to be costly or time consuming. Civil recovery is as important as the background check to the loss-prevention process and it's time that small-business owners took advantage of the civil laws that have been enacted to protect them and the honest customers they rely on.

Natt O. Reifler is a partner attorney of Palmer, Reifler & Associates. He can be reached at 407-875-3400 or nreifler@civilrecoverylaw.com