EXHIBIT

B

Natt Reifler                                      James Sweeney v. Federated Retail Holdings

---

**1**

```
 1      IN THE UNITED STATES DISTRICT COURT
        FOR THE EASTERN DISTRICT OF MICHIGAN
 2              SOUTHERN DIVISION
 3                  - - -
 4  James M. Sweeney, et al., )
                              )
 5          Plaintiffs, )
                              )
 6    vs.         ) Case Nos. 2:06-CV-10886
                  )           2:06-CV-10887
 7  Federated Retail Holdings, ) Hon. George C. Steeh
    Inc., et al.       )
 8                     )
            Defendants. )
 9
10                  - - -
11
12      Deposition of Natt Reifler, a defendant
13  herein, called by the Plaintiff for oral examination,
14  pursuant to the Federal Rules of Civil Procedure,
15  taken before Stacy Pace, RPR, CSR, CRR and Notary
16  Public, State of Florida, at the offices of Esquire
17  Deposition Services, on Friday, January 19, 2007,
18  commencing at 10:38 a.m.
19                  - - -
20
21
22
23
24
25
```

**2**

```
 1 APPEARANCES:
 2 On behalf of the Plaintiffs:
 3      Carolyn Kaye Ranke, Esq.
        Mary Brigid Sweeney, Esq.
 4      Brent Coon & Associates
        1220 West Sixth Street, Suite 303
 5      Cleveland, Ohio 44113
        (216) 575-7650
 6
 7 On behalf of Defendant Palmer Reifler:
 8      Michael Ashcraft, Jr., Esq.
        Plunkett & Cooney, P.C.
 9      38505 Woodward Avenue, Suite 2000
        Bloomfield Hills, Michigan 48304
10      (248) 594-8217
11
12 On behalf of Defendant Federated Retail
   Holdings, Inc.:
13
        John McManus, Esq.
14      McManus Law, P.L.L.C.
        999 Haynes, Suite 205
15      Birmingham, Michigan 48009
        (248) 642-5288
16
17                  - - -
18
19
20
21
22
23
24
25
```

**3**

```
 1              I N D E X
 2 Testimony of NATT REIFLER
 3      Direct Examination by Ms. Ranke ........... 4
 4 Certificate of Oath ........................... 142
 5 Certificate of Reporter ....................... 143
 6           - - - -
 7
 8            E X H I B I T S
 9 Deposition Exhibit No. 1 ...................... 4
            (notice of deposition)
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

**4**

```
 1      Deposition taken before STACY PACE, RPR, CSR, CRR,
 2 and Notary Public in and for the State of Florida at
 3 Large, in the above cause.
 4           - - - -
 5 Thereupon,
 6              NATT REIFLER,
 7 having been first duly sworn or affirmed, was examined
 8 and testified as follows:
 9           DIRECT EXAMINATION
10 BY MS. RANKE:
11      Q   Would you please state your name for the
12 record and spell your last name?
13      A   My name is Natt Reifler, R-E-I-F-L-E-R, as in
14 Frank, L-E-R.
15      Q   Mr. Reifler, my name is Kaye Ranke, and
16 I'm one of the attorneys that represents the
17 plaintiffs in these cases.  For the record, you have
18 been provided as a corporate witness on behalf of
19 the defendant, Palmer, Reifler & Associates.  Are
20 you aware of that?
21      A   Yes.
22      MS. RANKE:  I'll mark that.
23      (Deposition Exhibit No. 1 marked for
24 identification.)
25
```

---

**FINCUN-MANCINI -- THE COURT REPORTERS**
**(216) 696-2272**

Natt Reifler                                          James Sweeney v. Federated Retail Holdings

---

**37**

1  Q   If you can, tell me who are your firm's
2  five biggest customers or clients?
3      A   The largest clients of our firm, the top
4  five would probably include Wal-Mart, Kmart,
5  JCPenney, Walgreens, possibly -- it's hard to say
6  who the fifth would be.
7      Q   And when you indicate largest, are you
8  talking about in terms of number of cases to derive
9  at our top five, or in terms of overall income
10 percentages of work?
11     MR. ASHCRAFT:  I think this is getting far
12 afield and getting into proprietary
13 information.
14     MS. RANKE:  I'm not going to ask for any
15 specific amounts; I'm just trying to generally
16 figure out how he's breaking it down.
17     MR. ASHCRAFT:  Okay.  Well, I would just
18 say, so we can kind of keep on track here, I
19 think this kind of thing is something that I
20 can make objections on proprietary information
21 and all that kind of stuff.  I don't want to do
22 that to interrupt your examination, but if
23 we're getting off in these kinds of things, I'm
24 going to have to.
25     MS. RANKE:  I don't -- I'm not planning on

**38**

1  staying on this line.  I just am trying to get
2  some, again, background as to the nature of the
3  firm.
4      MR. ASHCRAFT:  Well, I think you've done a
5  good job of doing that, but now getting into
6  specific largest clients of the firm is getting
7  into stuff that's more proprietary as opposed
8  to getting a good feeling for the makeup of the
9  firm, the type of work they do, et cetera.
10     MS. RANKE:  Are you going to instruct him
11 not to answer that question?
12     MR. ASHCRAFT:  I'm not going to do that at
13 all.  I'm just saying I hope we don't go down
14 this -- this road that I would have to say, you
15 know, we can't go down this road any longer.  I
16 don't want to do that.
17     MS. RANKE:  I understand.
18     MR. ASHCRAFT:  Okay.
19 BY MS. RANKE:
20     Q   I just want to get a feel from -- my
21 question specifically is:  When you talk about your
22 top five, are you talking about in number of cases
23 or number of assignments, or are you making the idea
24 of top five based upon income derived, or they may
25 be one and the same?

**39**

1      A   They often correlate.  So in many
2  respects, they could be both in the number of
3  placements as well as the overall amount of revenue
4  that could be generated or might be collected for
5  them.
6      MS. RANKE:  Let's take just like a
7  five-minute break.
8      (Brief recess.)
9 BY MS. RANKE:
10     Q   Part of this case involves your collection
11 efforts in -- in the state of Michigan, so I would
12 like to know how many clients your firm currently
13 conducts civil recovery methods for in the state of
14 Michigan.
15     A   It's hard for me to estimate, but I would
16 imagine the top four that we mentioned earlier
17 probably all have stores within the state of
18 Michigan.  I know Lord and Taylor has at least a few
19 stores in the state of Michigan, and I quite
20 honestly do not know what other retailers do have
21 stores in the state of Michigan.
22     Q   Do you know, in terms of your firm's
23 overall work, what percentage of your work is done
24 in the state of Michigan?
25     A   Let's see.  What do we have, 50 -- or 52

**40**

1  states in the United States?
2      Q   51 counting Puerto Rico, I believe.  I
3  don't know that there's a lot of retailers in Guam,
4  but I could be wrong.
5      MR. ASHCRAFT:  Or American Samoa.  I mean,
6  we can go on and on in this.
7      MR. MCMANUS:  They don't count Iraq.
8      MR. ASHCRAFT:  That's right.
9      THE WITNESS:  Some -- some states have
10 larger population centers and it -- the number
11 of cases or the number of -- yeah, the number
12 of cases that our firm -- because as we talked
13 about, we do send letters in many states
14 throughout the United States.  The number of
15 letters that we would send in the state of
16 Michigan would be no -- no larger than -- well,
17 I think it would be proportionate to the number
18 of people in the state of Michigan versus the
19 populations of other states, because --
20 BY MS. RANKE:
21     Q   Let me --
22     A   In other words, I wouldn't want to say
23 it's just one-fiftieth of all the letters we sent,
24 because there's some large cities in the state of
25 Michigan that might move its population up higher on

---

**FINCUN-MANCINI -- THE COURT REPORTERS**
**(216) 696-2272**